Good morning, Your Honors, and may it please the Court. My name is Andrew Greenlee, and I'm here on behalf of Ms. Hilton. Your Honors, the parties specifically negotiated the conduct that would serve as the basis for the plea agreement. Based on that conduct, they negotiated a total offense level. That total offense level contemplated a specific loss-amount calculation. The parties also specifically agreed that Ms. Hilton would be permitted to request a below-guideline sentence. Ms. Hilton exercised the right to question. Does the plea agreement limit the government's ability to bring additional facts or relevant conduct to the Court's attention in any way? Your Honor, the plea agreement – I'd like to make two points on that. First, the parties negotiated the specific facts that would be – serve as the basis for the plea agreement. Probation, when this happened – Right. But did the government reserve its right? Didn't the parties both reserve their rights to bring additional information to the Court's attention that may have a bearing on the Court's sentencing decision? Your Honor, if I may, I'd like to read the – that provision in its entirety, the additional sentencing information provision. Quote, The sentencing stipulation guidelines calculation are based on information now known to the parties. The parties may provide additional information to the United States Probation Office and the Court regarding the scope, nature, and extent of the defendant's criminal conduct and any aggravating or mitigating circumstances. Good-faith efforts to provide truthful information or to correct factual misstatements shall not be the grounds for the defendant to withdraw her plea. Counsel, I had trouble with your argument on that based on those words. So I must be missing how you're reading them. Here's my problem with them. Actually, two problems. One is that what the government produced was in response to an argument by the defendant to give her a lower sentence than her stipulated guidelines would provide for. And I believe we have case law that says that's okay. But even aside from that, this sentence that you just read, the parties may provide additional information regarding the extent of the defendant's criminal conduct. And the additional information, as I understand it, now maybe I misunderstand it, is that she also had committed the same sort of fraud against C.R.'s mother. Right. What is violative there? It looks like that's fine under this sentence that you just read. What am I missing? Your Honor, it's the information now known to the parties. Our position is that they sat on this information, and that's clear from the defendant. We assume for purposes of discussion that they did sit on the information, and the first time you ever heard of it was from the government's sentencing brief. Nevertheless, when you told the judge or your side, I don't know who are you below, told the judge, judge, this is news to us, we need a fair opportunity to respond, the judge said, okay, how much time do you want? And whatever the defense said, the judge gave him more time than that. Yes, Your Honor. Two points. Number one, and if I could address your points out of order. Ms. Hilton specifically negotiated, and we believe that this was an inducement for her to take the plea, that she could make an argument to the Court for a downward departure, which she did. Now, the government knows how to craft an agreement that says that she's not allowed to do that. That's in the Whitney case. But she wanted to be able to argue for a downward departure, and that's fine. And she got a deal that she could, and that's fine. But I can't see where she got a deal that the government couldn't introduce information that would show that her criminal conduct was more extensive than what she pleaded to. Well, okay. And this will address your second point. At the sentencing hearing itself, or at the first sentencing hearing, the – when the judge asked probation, why didn't – why wasn't this information included in the pre-sentence investigation report? Probation said, we knew about this information. We interviewed this victim, but it was, quote, not contemplated in the plea agreement. So if the parties didn't contemplate this – this third victim to be included, and that's a violation of the relevant conduct and the – I have to look at the words. Your deal wasn't with the probation officer. It was with the U.S. attorney's office, and the deal was put in writing. That's correct. That's correct. So I have to look at the words of the writing. Where does the writing, as opposed to what the probation officer said, prevent the U.S. attorney from introducing evidence of the fraud against CR's mother? It's in the first sentence. The stipulated sentencing guidelines calculation are based on information now known to the parties. There's another sentence right above the sentence that you read that specifically pertains to relevant conduct. That's right. And it says that the court may consider facts charged or uncharged in determining the range. So I take it that your theory is that when you enter into a plea agreement with the government and you have this language, then the government essentially is boxed out from bringing forth any facts not addressed in the party's stipulated factual statement, even in response to an argument that the defendant makes in support of her downward departure request. Does that sum up your argument? No, Your Honor. Not at all. First off, they're not boxed in. They're not circumscribed. They can correct factual misstatements. So if Ms. Hilton – suppose Ms. Hilton had argued in her sentencing papers about the offense characteristics, and she had misstated some facts. Other than correction of facts, they can't bring out any new facts that say, wait a minute, downward departure is really not appropriate in this particular case. We're going to stick with our negotiated range and ask for the low end instead, because look at these other facts. The government – That pertain to essentially bad acts or criminal conduct, that the government's boxed out from raising those sort of issues. What the government's boxed out from doing, and what in our – in our view that they did, is they can't argue for – make an argument that sounds for all the world like an argument for a sentencing enhancement. Well, they didn't. They didn't. You asked them on Dragon and Whitney, the two cases you rely on, and those are cases. To make them analogous to this case, it would be a plea agreement. I don't remember what the plea agreements were for in that case, in those two. But to be analogous, there's a deal, guideline range, 21 months to some higher number, and then the prosecutor comes in unbidden, not responding to anything, and shows the judge that this deal is really not just and it should be a whole lot higher, so there ought to be a departure upward, undermines his own deal. And I can't see where this is analogous to Mondragon or Whitney. Here's where, Your Honor. First, in the loss amount, they specifically negotiated the loss amount. Then the government, in its sentencing papers, said the loss amount is actually more than $500,000, and more than that if the third victim is included. So the government, if you were to excise the third victim and that loss amount – and I should note, Your Honors, it's well established that the party stipulation is not binding on the court. So to say the loss amount is actually $500,000 or more than that, in effect, is trying – it's a backdoor way to influence the court to actually enhance her sentence based on the loss amount calculation. And if I could move, Your Honors, to the – what happened at the sentencing hearing itself, the government did three things. And again, to my ears, they sound like an argument for aggravating circumstances. First, they said – and they argument – they argued that this – these facts distinguish her from a typical mortgage fraud case. Well, they should have argued that she was within the typical mortgage fraud case. They said, number one, it was a Ponzi scheme. It was a sophisticated scheme. To my ears, that sounds like a sophisticated means enhancement, or an argument for a sophisticated means enhancement. Did they ask for an upward departure or even something above the calculation? They did not. They did not. But they did argue that she was in a special relationship with the victims, and that these were not only her employees, they were in, quote, emotional dependency with Ms. Sillerton, and that she took advantage of those people. To my ears, again, that sounds like an abuse of trust, an argument for an abuse of trust enhancement. You've got less than a minute. Would you like to save some time? I would like to reserve. All right. Thank you. Thank you. Good morning. May it please the Court. Good morning. Good morning, counsel. I'm Elizabeth White for the United States. I just want to make a couple of points. First of all, in the plea agreement, the government promised to recommend a 21-month low-end guideline sentence. And if you look through the excerpt of record, you'll see that the government fulfilled that promise. The government urged the court to impose a 21-month low-end guideline sentence, and the prosecutor did so on no fewer than eight occasions. That's ER 38, 39, 41, 42, 43, 96, 99, and 101. And this was not a recommendation, 21 months with a wink and a nod, you know, please go higher. The prosecutor, if you look in particular 41 through 43, talked about the 131 mortgage fraud defendants who had been sentenced in the District of Nevada since we've been having problems with mortgage fraud since before the recession started. We've prosecuted a lot of these, and they've gotten a huge variation of sentences based on things like how extensive the fraud was, whether they pleaded guilty, whether they cooperated, the amount of restitution, the amount of forfeiture. And the prosecutor made the argument that when you take all of those factors into account, we provided that information to the defense. The 21-month low-end guideline sentence is the right sentence to give parity for this defendant in relation to all of the other defendants who have been convicted. I mean, that seems fine. Okay. Defense isn't arguing that somehow the government breached by arguing for a 48-month sentence or something like that. Right. I think the unfairness that seems to arise from this record is that the defendant thought that the parties had negotiated to have the sentence based on a particular set of facts related to the crime that she committed. And she thought that when you, your office, agreed to allow her to make an argument for a downward departure, that the parties, that you were free to oppose that, perhaps, but not based on new information that was going to be interjected into the equation. And, see, you know, plea agreements, this Court enforces the literal terms of the plea agreements. And it seems like, you know, their argument is that the government breached the plea agreement by advising the court of facts beyond the facts in the facts supporting guilty plea section of the plea agreement. And I've read this plea agreement 20 times, and there is no provision in here that says the government promises. I don't think it's that. I think it's the, it's the, whatever, section 8, the positions regarding sentence paragraph, that seems to me to give rise to the unfairness. You, the government could well have inserted a clause that said, either said, no, we're going to recommend 21 months and you don't get to argue for a downward departure. That's the, that's what we need in order to go forward with this. Or it could have said, fine, you're free to argue that to the judge, but we reserve the right to oppose that based on any information we have, including information that's not contained in our, in our stipulation. But you didn't, but the government didn't do that here. Well, what we've got, I mean, so the government, the government promised to recommend a low-end sentence. The defendant reserved the right to ask for a below-guideline sentence. The provision in the, in the plea agreement, which explicitly says that the parties can provide additional information about the nature, scope, extent of the criminal conduct in any aggravating or mitigating circumstances, the idea that we could not do that in response to the request for a below-guideline sentence, I just don't see that anywhere in. No, I'm not saying that the government couldn't respond, but not based on information beyond the scope of the, the, the, you know, if the offense conduct that the parties agreed were, that was what was, the sentence was going to be based on. Well, see, now, and that's, and that I need to go back. There is nowhere in this plea agreement that says the sentence will be based on the facts listed under the facts-supporting guilty plea. The facts-supporting guilty plea section of the plea agreement has a very specific purpose, and the purpose is to fulfill the court's obligations under Criminal Rule 11b-3, I think, which says that before the court accepts a guilty plea, it has to, it has to ensure itself that there is a factual basis for the guilty plea. And if you read that section, facts-supporting guilty plea, what the defendant does in that section is she stipulates that the facts herein listed satisfy each and every element of the offensive conviction. I'm talking about the stipulation as to the facts that we're going to form the basis for the guidelines calculations, and the agreement does state that this, they're going to be based on this. And I'm saying from the defense standpoint, I think her reading of this agreement was, great, I've, I've got the government to agree with me that this is the universe of facts that's going to be the basis for sentencing. I've reserved the right to argue for downward departure. Obviously, she's going to argue, you know, I'm really not that bad a person. If the government had wanted to reserve the right to argue against that on the basis of information outside what was agreed to in the plea agreement, it seems to me you needed to reserve that explicitly. I think that there might be, I might have two comments to that. First of all, the government did agree to a guidelines calculation, and the guidelines calculation was based on certain facts that were agreed to. Two victims. Right. Two victims. Right. Three. Exactly. Right. And the government did not argue at sentencing for a different guidelines calculation. I mean, the guidelines calculation was based on those facts that the parties had agreed to. Am I understanding this right? There are two sets of facts, you're contending the relevant conduct, and then a subset of that set of facts, which is the substantial basis, in fact, for pleading guilty. Right. Well, the section in the plea agreement. Is that what you're saying? Yeah. The section in the plea agreement titled, entitled, facts supporting guilty plea, is where the defendant says. That was, I understood that to be the substantial basis in fact. Yes. I think Judge Watford is asking you, and I'd like to know to make sure I'm clear on it, whether that paragraph describing, or section describing those facts, basically stealing two women's money, is meant to be the universe of facts for sentencing as well, or whether the language is clear that that's the substantial basis, in fact, for justifying a plea of guilty at all. What the language of the plea agreement says is that it's the substantial base effect for justifying the plea agreement. There is, in their opening brief, the defendant says that the plea agreement said that those facts would be the basis for sentencing. And there's simply nothing in that section that says that will be the basis of sentencing. Now, that was the basis for the guidelines calculation, the 21 to 27 months. And that's the provision that I'm looking at. Now, obviously, we're talking about a document here, so I'll be specific. I'm looking at ER 154. This is the additional sentencing information right below the relevant conduct. It does say that the stipulated guidelines calculations are based on information known to the parties. But in terms of the nature, scope, and extent of the criminal conduct, the parties both reserve the right to argue additional information to the court. Yes. That's the provision that you're talking about, right, where it says the parties may provide information to the USPO and the court regarding the nature, scope, and extent of defendant's criminal conduct. And reading on to the next page, in any aggravating or mitigating facts or circumstances. That's the provision, I think, that helps the government's case in that. Now, that's what you're doing, right? She's arguing for a downward departure based on mitigating facts that she's got. And the government's coming forward with additional information regarding the scope of the criminal conduct that then warrants a low-end sentence rather than a downward departure from the stipulated guideline range. Yes, that's exactly correct. And if I could just make two points. First of all, Excerpt of Record 31, the defense acknowledged that the government was not seeking to deviate from the range. I mean, we, you know, this, we brought forward additional information to counter her sentencing memo, which talked about the positive impact that she had on the community and all the great work that she's done for the community. We said, well, wait a second, let's look at the whole picture. And at the sentencing hearing, the judge said to the defense counsel, now, the government's not trying to deviate from that range. They're not talking about enhancements or changing that range upward. And defense counsel said, no, I'm absolutely, no, I acknowledge that the government's not trying to deviate from the guideline range. The prosecutor actually said that in the first hearing, that's at ER 98 and 99, where he was talking about the aggravating circumstances, but said that he's certainly not asking for a higher guideline range or a higher sentence. He's simply responding to the 3553A. The one other thing that I wanted to point out, and this is just to correct the record, this idea that the information about the one victim's mother, that actually, it was, that was information that was known to the parties. That wasn't something that was sprung on the defense. And defense counsel said at the sentencing hearing, that's at ER 31, he said, it's not like I'm not aware of the fact that there's additional relevant conduct here. There was no dispute in the district court that this information about the mother was actually relevant conduct. I know that they raised in their reply brief the idea that this didn't constitute relevant conduct. But in fact, the motion that they made in the district court to withdraw the plea was a claim that the government breached the plea agreement by introducing new relevant conduct. And they referred to this as relevant conduct. Oh, I'm sorry. I am way over my time. That's okay, Judge Krenfeld, I have a question. I didn't want to use up your time on this, because it's not directly pointed at the argument, but I'm curious about two things. One was, if I recall correctly, and there are a lot of cases, I might have mixed them up, this is the case where a bunch of letters about what a wonderful woman this was were addressed to whom it may concern rather than to the district judge. Yes. Is that right? Yes. And the district judge took note of that. He did. And was there some suggestion that these people that wrote the letters didn't realize that she was pleading guilty to a Federal felony and were just writing letters that might be for her to get on some church board or something? You know, I don't know. From my reading of the record, and all I have is the record, I mean, I know that she did not. You don't know. The record doesn't reveal any more than that.  It does reveal that the judge's remark looked more like that. Earlier on in the process, the probation office had said that she would not authorize probation to talk to her husband about it. And, yes, the judge noted that all these letters were to whom it may concern, but I don't know. There's nothing further. The other question I had was, if I'm recalling right, and I just read this pretty superficially, the restitution goes to the bank, and the two old ladies and the middle-aged broke lady that lost their houses or are fighting to keep their houses, I think one of them is still fighting to keep it, and they're just out in the cold. Is that right? Well, I know that the restitution goes to the bank. They're considered the folks that lost their houses. Nothing for the actual crime victims here, the women. That's my reading of the record, and I don't know how that was negotiated. Thanks. Your Honor, I'd like to really pick up towards the end of what opposing counsel said. This was something that was known to all the parties. The government repeatedly used the phrase that by moving for a downward departure, Ms. Hilton, quote, opened the door. Well, that raises two arguments for us. First, that implies that the door was closed in the first place, and the government knew that the door was closed. So if we are opening the door by moving for a downward departure, that renders our promise illusory, because how could the government know about this conduct, sit on it, wait for us to move for which exercise are her rights under the agreement to move for a downward departure, and then say, well, oh, surprise, here's this new law that we negotiated for the whole time, and that we negotiated would not be part of the plea agreement. Thank you. Counsel, why wouldn't it be against public policy for a prosecutor to agree that we are going to keep it secret from the judge that this woman is a much bigger and worse criminal than we have thus or heretofore revealed, so that maybe she can get her home confinement? Why wouldn't it be against public policy for the government to agree to keep this stuff secret? Your Honor, I would approach it from a different angle. I agree that the Court should know about the entirety of someone's circumstances. But I'd like to make two points on that. Number one. If you're the sentencing judge, you're thinking, gee whiz, Martha Stewart got home confinement. Home confinement is what this woman wants. Maybe I should think about home confinement. But when he hears about yet another old lady being thrown out of her house, he's likely to rule it out. Why isn't that against public policy to say he can't be allowed to find out about the other old lady? Here's why, Your Honor. It's in the high 90s, the amount of cases that are resolved through plea agreements. It's against public policy to induce someone to take a plea based on one set of facts and then pull the – it's a fundamental fairness issue – and then pull the rug out from under her and introduce a third set of facts that the parties had negotiated would not come before the Court. It's contracts. It's a contracts case. As to public policy, I have a case, and I've handled several cases, where the government says this is – and it happens all the time in drug conspiracy cases – this is the universe. We've got you for, let's say, more than 28 grams of crack cocaine. And then throughout – so he pleads guilty because it's a controlled body. And then in the course of the relevant conduct provision, they bring in 5 kilograms of cocaine. And he's responsible through the relevant conduct for all of it. That's just not fair, Your Honor. Why is it – why isn't it? Suppose you did have a possession with intent to distribute one 8-ball, and actually the guy had 5 kilos. Even if you had a deal that the government may not introduce evidence of the 5 kilos, why wouldn't that contract be void as against public policy because of the effect on the public of denying the judge access to knowledge of the 5 kilos? Because it bumps up against his right to be proven beyond a reasonable doubt guilty and not by a preponderance of a sentence. So if he had known 5 kilos are at issue, he says, hey, I have nothing to – I have nothing to – why not just take it to trial? I'm facing a huge mandatory minimum on the 5 kilos. They only have me on a controlled body for these 28 grams. So I can – I can beat everything. I can beat the 5 kilos, but I can't beat the controlled body. That's why he pleads guilty. So that's why – and so it's against public policy because it violates his right to be proven beyond a reasonable doubt of the charge – of the charge to pass. With that, Your Honor, it's time to rest. Thank you. Thank you very much, counsel. The matter will be submitted for a decision. We'll call the next case, and that is Ballestrieri v. Menlo Park Fire Protection District.
judges: Kleinfeld, Nguyen, Watford